**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. SAG-24-0120** |
| | * | |
| **HAROLD DORMAN** | * | |
| | * | |

*******

**MEMORANDUM OPINION**

On April 10, 2024, a grand jury returned an indictment against Harold Dorman and others for violation of 18 U.S.C. § 2118(d) (conspiracy to commit pharmacy burglary), 18 U.S.C. § 2118(b) (pharmacy burglary), and 21 U.S.C. § 846 (conspiracy to distribute controlled substances). ECF 1. On the morning that his trial was scheduled to commence, October 27, 2025, Mr. Dorman appeared in Court and pled guilty to Count One of the Indictment. ECF 174, 176. Subsequently, new counsel was appointed to represent Mr. Dorman and, on April 13, 2026, Mr. Dorman filed a motion to withdraw his guilty plea. ECF 222. This Court has considered that motion, the related exhibits and briefing, ECF 224, 233, 234, and the evidence adduced and arguments made by counsel at an evidentiary hearing held on September 24, 2026. For the reasons that follow, Mr. Dorman's Motion will be denied.[1]

## I. PROCEDURAL HISTORY

The three charges against Mr. Dorman in the Indictment related to a series of nineteen pharmacy burglaries and related drug trafficking offenses. Two of the three charges carried a maximum sentence of twenty years' incarceration. Mr. Dorman's advisory guidelines range, if

[1] The government requested in its opposition that it be relieved of the plea agreement's obligations with respect to sentencing recommendations because Mr. Dorman breached the provision providing that he "will not move to withdraw from the plea of guilty." ECF 233 at 17. This Court will consider that request at sentencing when it calculates the applicable advisory guidelines range.

convicted at trial of all three counts, would be 135 to 168 months of incarceration. ECF 222-3 at 7.[2]

After his court appointment, Mr. Dorman's attorney, Christopher Nieto, filed several pre-trial motions on Mr. Dorman's behalf, including a motion seeking to suppress evidence obtained from real-time location data warrants issued in Albemarle County, Virginia. ECF 100–103. This Court denied Mr. Dorman's motions to suppress evidence after a hearing held on June 4, 2025. ECF 137.

A few weeks after the ruling, with an October 27, 2025 trial date looming, Mr. Nieto emailed government counsel to discuss a potential plea offer. ECF 233-1. On August 27, 2025, the government stated that it would prepare and extend a plea offer to Mr. Dorman and one of his co-defendants, William Sherod. ECF 233-2. Government counsel sent plea offers to counsel for Mr. Sherod and Mr. Dorman on September 2, 2025, under which the government would recommend a sentence of no more than 46 months' imprisonment for each defendant. ECF 222-2 at 12; ECF 233-3 at 3. The next day, Mr. Nieto emailed government counsel to state that he had just "finished [his] meeting with Mr. Dorman" and to request some changes to the agreement suggested by Mr. Dorman, including a representation that Mr. Dorman wanted to resolve the case for "a flat 36 months[.]" ECF 233-3. Mr. Dorman rejected the government's offer.

On September 5, 2025, the government filed its motions in limine and proposed jury instructions and voir dire. ECF 148–52. Thereafter, Mr. Sherod accepted the September 2, 2025 plea offer with the 46-month cap and pleaded guilty. ECF 154.

[2] Pincites to ECF exhibits refer to the page numbers in the ECF headers at the top of the page and not to any other pagination in the exhibit.

On October 1, 2025, United States Magistrate Judge Charles Austin held a *Lafler* hearing. ECF 222-3. At that hearing, Mr. Dorman claimed that he had not seen the September 2, 2025 plea letter until September 24 and did not fully understand its terms, while Mr. Nieto informed Judge Austin that he had discussed that plea offer with Mr. Dorman "multiple times over the weeks." *Id.* at 8–10. Regardless, on the record at that proceeding, Mr. Dorman declined to accept the offer with the 46-month cap. *Id.* at 11–12. Judge Austin allotted additional time for Mr. Dorman to review the plea agreement, with the government agreeing to hold it open temporarily, and rescheduled the *Lafler* proceeding for October 10. *Id.* at 15–16.

On October 7, 2025 (less than three weeks before the scheduled trial date), Mr. Nieto filed a motion for an attorney inquiry hearing because Mr. Dorman asked to have a new attorney assigned to his case. ECF 161. United States Magistrate Judge Erin Aslan held the attorney inquiry hearing on October 9, 2025 and October 10, 2025, outside the presence of government counsel. ECF 224-1; ECF 222-4. During that hearing, Mr. Dorman told Judge Aslan that he did not feel he had been able to review sufficient information regarding "the real time tracking that they made the arrest with." ECF 224-1 at 26. At the conclusion of both days of the attorney inquiry proceeding, Judge Aslan denied Mr. Dorman's request to substitute new counsel. ECF 166. At the continued *Lafler* hearing on October 10, 2025, before Judge Austin, Mr. Dorman reiterated repeatedly that he rejected the 46-month cap offer. ECF 192 at 11, 12, 13. Later that same day, this Court held a pretrial conference and ruled on the pending motions in limine. ECF 165.

Four days before the commencement of trial, on October 23, 2025, Mr. Nieto filed a motion at Mr. Dorman's request to allow him to proceed *pro se* or, in the alternative, with appointed standby counsel. ECF 171. But on October 24, 2025, the Friday evening before the Monday trial date, Mr. Dorman asked Mr. Nieto about pleading guilty. ECF 233-4 at 3–4. Mr. Nieto promptly

contacted the AUSAs to request an offer. *Id.* The AUSAs obtained authorization for the new plea offer on Sunday evening and memorialized it in a letter dated October 26, 2025 ("the October 26 Plea Agreement"). ECF 222-6. The offer was almost the same as the prior offer, except that the government no longer recommended a third level reduction for timely acceptance of responsibility under U.S.S.G. § 3E1.1(b) (as it was the day of the trial) and no longer offered a 46-month cap, instead only offering an agreement to bind the parties' recommendations to a sentence within the agreed advisory guideline range of 57-71 months. *Id.* Mr. Nieto told Mr. Dorman twice, on the evening of October 26, 2025, and the early morning of October 27, 2025, that the October 26 Plea Agreement contained a sentencing range that was binding on the Court. *See* ECF 222-5 at 2 ("It is a binding plea for 57-71 months"); *id.* at 4 ("This plea is a binding plea to 57-71. That means that the Court will impose a sentence within that range.") According to Mr. Nieto's uncontroverted testimony at the motions hearing, he met with Mr. Dorman to review and sign the plea agreement on the morning of October 27, 2025, when the prospective jurors were in the courthouse ready to begin the trial. During that meeting, Mr. Nieto explained, he corrected his earlier misrepresentation and informed Mr. Dorman that the sentencing range bound the parties' recommendations but would not be binding on the Court.

The Court then held a plea colloquy with Mr. Dorman, at which he pleaded guilty to Count One. ECF 224-2. The Court asked, "Is there anything at all making it difficult for you to understand the proceeding so far today?" and Mr. Dorman responded, "No, ma'am." *Id.* at 5–6. He affirmed that he signed the plea agreement under a paragraph attesting that he had "carefully reviewed every part of [the plea agreement] with my attorney" and that he "understand[s]" it and "voluntarily agree[s]" to it. *Id.* at 6. During the colloquy, the Court mistakenly began to state that the plea was binding pursuant to Rule 11(c)(1)(C), but before the sentence was even concluded, the government

advised that it was not a binding "C" plea, but only a jointly recommended sentencing range that did not bind the Court. *Id.* at 14–15. This Court then explained:

> That makes sense, then I had that wrong. This is not a plea pursuant to Rule (c)(1)(C) but both parties are agreeing that they will recommend a sentence to me between 57 months and 71 months of imprisonment. I am not bound to impose whatever sentence the parties recommend, but the parties may advocate that and may bring to my attention all information about your background, character[,] and conduct. Then at your sentencing, the Government will move to dismiss all the open charges against you. Do you understand that that's what will happen at your sentencing, Mr. Dorman?

*Id.* at 15–16. Mr. Dorman responded, "Yes, Your Honor." *Id.* at 16.

After Mr. Dorman agreed to the statement of facts confirming his participation in the charged burglaries, this Court asked him whether anyone had "made any binding prediction or promise to you about what your sentence will be?" *Id.* at 21. Mr. Dorman responded, "That it wouldn't go over the range in the report." *Id.* at 22. Because that answer was inaccurate, this Court immediately permitted Mr. Nieto to confer with his client about the issue, and then asked Mr. Dorman, "So do you understand that there's no promises at this point today about what your sentence will be; that the Government and your attorney are both recommending that it be within a particular range; that it's likely that I would decide that a sentence within that range is appropriate, but there's no guarantee at this point as to what your sentence will be. Do you understand that?" *Id.* at 22. Mr. Dorman answered, "Yes." *Id.*

This Court also asked Mr. Nieto and Mr. Dorman for details about their conversations regarding the plea offers. They agreed that they had spoken "at least half a dozen times" about previous plea offers and that Mr. Nieto had reached out to the government late on Friday afternoon about the possibility of another plea offer, which they received on Sunday. *Id.* at 23–24. Mr. Nieto and Mr. Dorman had texted about the October 26 Plea Agreement and were able to speak about it on the morning before the colloquy, but noted that, "[t]his plea agreement, with the exception of

that one paragraph of the 57 to 71 months, is wholly consistent with the previous plea agreements that we had discussed, as I indicated, at least a half dozen times." *Id.* This Court also asked Mr. Dorman, "I know that there were some issues developing as of last week with respect to you and whether you wanted to continue to be represented by your attorney. Were you able to work these things out and communicate with him about deciding to accept this plea?' *Id.* at 24. Mr. Dorman responded "yes." *Id.* But when he expressed a lack of satisfaction with Mr. Nieto's performance, this Court commenced an ex parte proceeding to obtain more information about the relationship. *Id.* at 26–31. Mr. Dorman explained that he did not feel like he had had the opportunity to review all the discovery early enough in the case to make an informed decision about the earlier plea offer, but that, at present, he had reviewed discovery and wanted to accept the plea because, "I don't want to hurt myself further or put myself in the further hole when it comes to the time." *Id.* at 28–30. Mr. Nieto explained that he had considered Mr. Dorman's request "to supplement the record with additional legal issues," and that after reviewing them, "From my perspective at least at the *Strickland* standard, I did not think they were meritorious." *Id.* at 31. After the proceeding concluded, this Court was satisfied that Mr. Dorman had had adequate assistance of counsel and twice confirmed his continuing desire to plead guilty. *Id.* at 31–32, 35. Both times, Mr. Dorman responded, "Yes, ma'am." *Id.*

Based on the text messages contained in the hearing exhibit, just a few days after the plea colloquy, Mr. Dorman first asked Mr. Nieto for the hearing transcript. It soon became clear that Mr. Dorman sought to withdraw his guilty plea. This Court appointed new counsel for Mr. Dorman, who filed the instant motion after review of the extensive case record.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 11 permits a defendant to withdraw a guilty plea upon showing "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Fourth Circuit has been clear that the burden of showing a fair and just reason rests with the defendant and is a "heavy" one. *See, e.g.*, *United States v. Thompson-Riviere*, 561 F.3d 345, 348 (4th Cir. 2009) (internal quotation marks omitted); *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000). A fair and just reason "essentially challenges the fairness" of the rearraignment proceeding. *United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir. 1995) (citation omitted). "[A] properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." *United States v. Bowman*, 348 F.3d 408, 414 (4th Cir. 2003).

The parties agree that the applicable test is the six-factor standard described in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). Under that test, this Court must consider (1) whether the defendant has offered credible evidence that his plea was somehow involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether the defendant has had close assistance of counsel; (4) whether there has been a delay between entry of the plea and the filing of the motion; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources. *Id.* The Court "typically should balance these factors, along with any other pertinent information, to reach its decision." *Thompson-Riviere*, 561 F.3d at 348. The first three factors are generally viewed as the most important. *See United States v. Davis*, 529 F. App'x 375, 379 (4th Cir. 2013) (citing *United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995) for the proposition that those are the "factors that speak most straightforwardly to the question whether the movant has a fair and just reason to upset settled systemic expectations by withdrawing her plea.").

## III. ANALYSIS

Mr. Dorman contends that *Moore* factors one and three counsel in favor of granting his motion to withdraw his plea. Specifically, he argues that Mr. Nieto erroneously informed him that the October 26 Plea Agreement was a "binding plea" and that, because of his mental state, he remained unaware when he accepted the plea agreement that the Court would be able to reject the parties' sentencing range. He further contends that, throughout his eighteen-month representation, Mr. Nieto disregarded his entreaties to raise a suppression issue Mr. Dorman believes to be meritorious.[3]

### A. Moore factors

Applying the *Moore* factors to the facts outlined above, Mr. Dorman has not met his "heavy" burden to show a fair and just reason for withdrawal of his guilty plea. Each factor is addressed below.

#### 1. Credible evidence that the guilty plea was involuntary.

Mr. Dorman asserts that his plea was involuntary because he was unable, at the time of the plea hearing, to process the fact that the parties' agreed sentencing range would not bind the Court. There is no dispute that Mr. Nieto, in two separate messages, originally advised Mr. Dorman that the plea range was binding. *See* ECF 222-5 at 2, 4. Based on Mr. Nieto's uncontroverted testimony at the hearing, he first corrected that representation during an in-person meeting with Mr. Dorman

---

[3] Mr. Dorman's current counsel also believes the suppression issue to be meritorious and provided extensive briefing on its merits in the instant filings. *See* ECF 222, 234. This Court declines to reach the merits of the suppression issue, which is a matter of first impression requiring interpretation of Virginia law. Whether or not this Court finds the suppression argument has merit is not relevant to this Court's evaluation of the *Moore* factors. For present purposes, it is sufficient to recognize the persistent tensions between Mr. Dorman and Mr. Nieto regarding Mr. Dorman's desire to raise his suppression issue. Those tensions are abundantly evident from the attorney-client communications adduced at the evidentiary hearing and the discussions during most of Mr. Dorman's court proceedings.

to review the plea agreement before the Rule 11 colloquy began. During the colloquy, this Court also initially referenced a binding Rule 11(c)(1)(C) plea, but before this Court could even finish the sentence, government counsel quickly corrected the misunderstanding. ECF 224-2 at 14–15. This Court then advised Mr. Dorman twice on the record—once after giving him an opportunity to confer with Mr. Nieto about this precise issue—that the Court was not bound by the parties' agreed sentencing range. *Id.* at 15–16, 22. Mr. Dorman confirmed on the record twice, under oath, that he understood. *Id.*

Mr. Dorman now argues that his guilty plea was not knowing and voluntary because a confluence of events rendered him unable to process the agreement's terms, despite his express representations to the contrary. He suggests that a combination of the "rushed" nature of the discussions about the final plea agreement, his strained relationship with Mr. Nieto, and his preoccupation with what he viewed as an unaddressed legal issue contributed to his inability to understand that the plea range was non-binding. ECF 222 at 16–18. But he did not express that sentiment during the hearing, instead assuring the Court (1) that there was nothing at all making it difficult for him to understand the plea proceeding, ECF 224-2 at 5–6; (2) that he signed the agreement after "carefully review[ing] every part of it" with Mr. Nieto, *id.* at 6; (3) that he understood that at his sentencing, this Court was "not bound to impose whatever sentence the parties recommend," *id.* at 15–16; (4) that, after initially expressing some confusion and having the opportunity to confer with counsel, while it was "likely" that the Court "would decide that a sentence within that [agreed] range is appropriate . . . there's no guarantee at this point as to what [his] sentence will be," *id.* at 22; and (5) that he had been able to work out the issues with Mr. Nieto about representation and had been able to "communicate with him about deciding to accept this plea," *id.* at 24, although he maintained his dissatisfaction with how the case had unfolded.

Mr. Dorman's current position contravenes each of those representations he made under oath to this Court and he has not offered any clear and convincing evidence to show that they were untrue when made. *See Beck v. Angelone*, 261 F.3d 377, 395–96 (4th Cir. 2001) (internal quotation marks omitted) (without "clear and convincing evidence to the contrary," a defendant's statements under oath at a Rule 11 proceeding are binding). The various issues Mr. Dorman mentions now about the last-minute timing of the plea, his ongoing disagreements with Mr. Nieto, and whether the plea was binding or not, were all fleshed out during the plea colloquy itself. This Court took specific, reasonable steps to ensure that Mr. Dorman had close assistance of counsel and fully understood that the sentencing range was not binding.

In light of the above, and this Court's observation of Mr. Dorman's demeanor during the rearraignment proceeding, this Court credits the statements he made under oath at that proceeding that he fully understood the non-binding nature of the plea, not his after-the-fact suggestion that he was unable to process what had occurred. It appears that Mr. Dorman made a knowing decision to accept the plea to avoid a "further hole as to the time" but has since experienced "buyer's remorse," which is not a valid reason to seek withdrawal. As the Fourth Circuit has explained:

> [W]hen a defendant pleads guilty based on the strength of the state's case and an assessment of the range of penalties to which he might otherwise be exposed, we have been especially reluctant to rescind the bargain. *See United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 82–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)). Pleading guilty typically entails a deliberate choice to accept the risks and rewards of a deal, and that decision may not be casually set aside on the basis of buyer's remorse.

*Dingle v. Stevenson*, 840 F.3d 171, 174 (4th Cir. 2016). Because this Court does not find that Mr. Dorman's plea was unknowing or involuntary, the first *Moore* factor weighs against withdrawal of the plea.

**2. Credible Assertion of Legal Innocence**

Mr. Dorman does not allege that the second *Moore* factor weighs in his favor. He has not credibly asserted legal innocence and the second factor therefore weighs against withdrawal.

**3. Close Assistance of Counsel**

Third, this Court finds that Mr. Dorman had close assistance of counsel. The standard is akin to that used in evaluating a claim for ineffective assistance of counsel. *See United States v. Sparks*, 67 F.3d 1145, 1153 (4th Cir. 1995) ("A defendant can demonstrate the absence of close assistance of counsel for purposes of the *Moore* test only by showing that her counsel's performance fell below an objective standard of reasonableness.") (internal quotation marks omitted). In that vein, to establish a lack of close assistance of counsel, Mr. Dorman "must establish: (1) that his counsel's performance fell below an objective standard of reasonable-ness; and (2) that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ubakanma*, 215 F.3d at 425.

This Court has an extensive written record of the text and email communications between Mr. Dorman and his counsel. That record confirms several of Mr. Dorman's contentions, specifically that he had ongoing issues with Mr. Nieto because of his desire to raise a particular legal argument about the Virginia search warrant and the resulting tracking of his phone. But Mr. Nieto testified at the evidentiary hearing that he filed suppression motions for Mr. Dorman (including a motion to suppress the tracking information) after thoroughly evaluating the discovery and conferring with other experienced counsel to identify the strongest suppression arguments. Mr. Nieto also told this Court at the plea colloquy that he did not deem the suppression issue Mr. Dorman wanted to advance (which would be an issue of first impression) to be meritorious. ECF

224-2 at 31. Thus, this is not a case in which a defense attorney failed to file suppression motions out of neglect or ineptitude. Mr. Nieto carefully considered which suppression motions to file and selected the motions he deemed strongest, though they ultimately did not succeed. His educated judgment that an issue of first impression lacked merit was a matter of strategy and did not fall "below an objective standard of reasonableness."

With respect to his representation in connection with the guilty plea, the written record of communications confirms that Mr. Nieto repeatedly urged Mr. Dorman to consider plea negotiations for weeks leading up to the October 27, 2025 trial date, but Mr. Dorman refused to engage in the discussion until the last days before trial, forcing a compressed time frame to review and process the plea agreement's terms. Of course, the only changed term was the sentencing recommendation, which moved from a 46-month cap to a 57-to-71-month range. ECF 224-2 at 24.

The record also confirms, as Mr. Nieto conceded at the hearing, that he initially misadvised Mr. Dorman that the plea agreement sentencing range was binding on the court. But the plea colloquy itself confirmed that Mr. Nieto had corrected his original misstatement to Mr. Dorman before the proceeding and that the government and the Court re-confirmed with Mr. Dorman on the record, twice, that the plea range was not binding. The Court also conducted a lengthy ex parte colloquy to explore thoroughly the precise state of the relationship between Mr. Dorman and Mr. Nieto before accepting the guilty plea. This Court ultimately concluded that Mr. Dorman had received constitutionally adequate representation from Mr. Nieto leading up to the guilty plea, particularly given Mr. Dorman's repeated statements that he had been adequately represented with respect to his decision to accept the guilty plea, though he was dissatisfied with the motions filed. Finally, this Court has been provided no evidence suggesting that, but for Mr. Nieto's representations that the sentencing agreement was binding, Mr. Dorman would have insisted on

going to trial. Mr. Dorman himself contradicted that notion when he said he wanted to avoid a "further hole when it comes to the time." ECF 224-2 at 30.

In sum, then, despite the tension in the attorney-client relationship, counsel's representation met an objective standard of reasonableness and the third factor weighs against withdrawal of his plea.

**4. Delay Before Seeking Withdrawal**

The government argues that there was meaningful delay between the entry of Mr. Dorman's plea on October 27, 2025 and the filing of his motion to withdraw the plea in April, 2026. Typically, that length of delay would well exceed the six-week period the Fourth Circuit characterized as "long delayed" in *Moore*. 931 F.2d at 248. But given that Mr. Dorman first indicated to Mr. Nieto a desire to file a motion to withdraw his plea within about two weeks of the plea proceeding, and that the subsequent delay resulted from the appointment of new counsel and the need for new counsel to review a significant quantum of evidence before preparing a motion, this Court will deem the delay factor neutral.

**5. Prejudice to the Government**

Withdrawal of Mr. Dorman's guilty plea would cause extreme prejudice to the government. The charges against Mr. Dorman are based on at least nineteen separate burglaries occurring in the early months of 2022. Relevant witness recollections are now four-and-a-half years old. The trial was anticipated to last multiple weeks and involve more than 40 government witnesses, all of whom were available to testify at the trial beginning on October 27, 2025. Should Mr. Dorman's guilty plea now be withdrawn, the government would have to redouble its efforts to arrange the complex trial more than a year later, when witness recollection has further deteriorated. While this

factor is not significant enough to be dispositive on its own, it certainly weighs in favor of denying withdrawal.

**6. Waste of Judicial Resources**

This Court already procured and compensated a pool of sixty-five jurors to hear this case on October 27, 2025, and would have to incur those same expenses again if this guilty plea were to be withdrawn. This Court would not, of course, permit the waste of judicial resources to outweigh any degree of unfairness to a defendant. But here, as detailed above, this Court finds no unfairness in holding Mr. Dorman to his knowing and voluntary guilty plea. This Court thus finds that the sixth factor also weighs against allowing this plea to be withdrawn. While this Court believes Mr. Dorman's instant motion stems from a simple change of mind rather than an intentional plan to mislead the Court into accepting an unfounded guilty plea, it cannot countenance either scenario without risking the waste of judicial resources and possible abuse by future defendants.

Because this Court concludes that the Rule 11 plea colloquy was properly conducted and that none of the six *Moore* factors weighs in favor of permitting withdrawal, Mr. Dorman's motion to withdraw his guilty plea must be denied.

## IV. CONCLUSION

For the reasons stated herein, Mr. Dorman's Motion to Withdraw his Plea, ECF 222, is DENIED. A separate Order follows.

Dated: October 28, 2026

/s/
Stephanie A. Gallagher
United States District Judge